IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| OREN WASHAKIE, | ) | |
| | ) | Case No. CV-05-462-E-BLW |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM DECISION** |
| v. | ) | **AND ORDER** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## INTRODUCTION

The Court has before it Defendant United States' Motion to Dismiss (Docket No. 9).  For the reasons expressed below the Court will grant the motion to the extent it claims Washakie was intentionally assaulted by the Fort Hall tribal police, but deny the motion to the extent it alleges that tribal police and EMTs negligently or intentionally failed to provide adequate medical care for the injuries suffered by Washakie.

Also pending before the Court is Plaintiff Oren Washakie's Motion to Strike (Docket No. 14).  That motion has been largely resolved by the parties' Stipulation (Docket No. 24).  However, the motion will be granted to the extent that the Halbert declaration attempts to proffer a legal conclusion as to the status of the

**Memorandum Decision and Order - 1**

tribal police officers, but will be denied in all other respects.

## BACKGROUND

Oren Washakie filed this action under the Federal Tort Claims Act ("FTCA"), alleging that he was assaulted while in the Fort Hall Jail by officers of the Fort Hall Police Department and that, after the assault, the police placed him in an isolation cell and ignored his requests for medical attention for over eight hours. Washakie claims that the Shoshone-Bannock Tribe, the Fort Hall Police Department and the Police Department are, for the purposes of the FTCA, part of the Bureau of Indian Affairs ("BIA").

The United States filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) arguing that although the tribal police officer are federal employees they are not federal law enforcement officers within the meaning of the FTCA. Based upon this premise, the United States argues that the assault and battery exception to the FTCA applies, there is no waiver of sovereign immunity under the FTCA, and the case is therefore subject to dismissal for lack of subject matter jurisdiction.

The United States' argument is supported by the declaration of Michael Halbert ("Halbert Declaration") and three attachments. The Plaintiff moves to strike the opinions contained in paragraphs 10 and 11 of the Halbert Declaration,

on the grounds that Halbert has not been established as an expert.  In addition, the

Plaintiff moved to strike paragraphs 6-9 of the Halbert Declaration, which refer to

the August 1996 memo of the Assistant Secretary of Indian Affairs ("The Deer

Memo"), and parts of paragraph 10 of the Halbert Declaration  referring to the BIA

Law Enforcement Handbook, Volume 1 Chapter 2 Section 4 ("The Handbook"),

on the grounds that those documents are not admissible evidence.

## ANALYSIS

## I.      The Halbert Declaration.

The relevance of the Halbert Declaration and the attachments thereto are

clear.  They establish the BIA's policy and procedures for certifying tribal police

officers as federal law enforcement officers.  That policy includes a determination

by the BIA that the delegation of law enforcement authority to a tribe under the

Indian Self-Determination and Education Assistance Act of 1975 (ISDA) does not

automatically result in the certification of tribal police officers as federal law

enforcement officers.  Rather, the BIA has determined that such tribal officers can

only become federal law enforcement officers if (1) the ISDA Agreement with the

tribe specifically addresses the transfer of federal law enforcement authority from

the BIA to the Tribe and includes an agreement as to how tribal law police may be

certified as federal law enforcement officers, and (2) the BIA actually issues

commissions to the tribal police officers.  These conclusions are supported by a memorandum issued by Ada Deer, the Assistant Secretary for Indian Affairs of the Department of the Interior, which is attached to Halbert's affidavit as Attachment I.

The Halbert Affidavit goes on to state that the ISDA Agreement between the Shoshone-Bannock Tribe and the BIA, also attached to the Halbert Declaration, does not specifically address the transfer of federal law enforcement authority and includes no provision for the certification of tribal police as law enforcement officers.  Halbert also indicates in his affidavit that the BIA maintains records of those individuals to whom Special Law Enforcement Certification Cards have been issued, he has reviewed those records, and there is no record of any such cards having been issued to a Shoshone-Bannock tribal police officer.  Finally, Halbert goes on to opine that neither of the two conditions established by the BIA have been satisfied and, therefore, none of the Shoshone-Bannock Tribe's police officer are federal law enforcement officers for purposes of the Federal Tort Claims Act.

Washakie's motion to strike contends that the BIA policies expressed in the Deer memorandum and the BIA Law Enforcement Handbook attached to the Halbert Affidavit  are inadmissible hearsay.  However, that objection has apparently been withdrawn, since the parties have now stipulated that "the

**Memorandum Decision and Order – Page 4**

attachments to the Halbert Declaration are authentic and may be considered as evidence properly before the court." Stipulation Regarding Affidavit of Michael Halbert, (Docket No. 24).

Washakie's motion also requested that the Court strike those portions of the Halbert Declaration that state any opinions because Halbert is not qualified to offer those opinions. The Court disagrees.

In his Declaration, Halbert states that he has worked for the BIA since 1994, that he was the Supervisory Criminal Investigator in the Office of Law Enforcement and Security, and that since 2003 he has been the Assistant Special Agent in Charge, District V, Office of Law Enforcement and Security. Halbert Declaration pg. 1, ¶ 1. The Court concludes that a law enforcement agent with these credentials and this experience would be qualified to offer an expert opinion concerning a tribal police department's jurisdiction and whether the requirements for federal law enforcement certification has been satisfied. In light of its broad discretion to evaluate an expert's qualifications and the tendency of the Federal Rules of Evidence towards the admission of evidence, the Court finds that Halbert is qualified to give his opinion on whether the Fort Hall Police officers were federal law enforcement officers at the time of the alleged assault. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-53 (1999).

**Memorandum Decision and Order – Page 5**

Although, the Court is satisfied that Halbert is qualified as an expert witness, the Court must also evaluate the evidence that he is offering.  It is not enough that he is an expert, his testimony must also be reliable.  *Id.* at 152.  Here, Halbert based his opinion not only upon his experience, but also upon his review of the Deer memo, the BIA Law Enforcement Handbook, and the absence of any record that Shoshone-Bannock tribal police have been issued SLECC cards by the BIA.[1]  For this reason, the Court concludes that Halbert's opinion that the tribal police are not federal law enforcement officers will be accepted as reliable and admissible.

## II.   Expert Testimony May Reference the Law but an Expert May Not Offer Legal Conclusions

It is clear that expert testimony concerning an ultimate issue is not improper.   Fed. R. Evid. 704(a).  However, "an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law." *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004)(citing *Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1066 n. 10 (9th

---

[1]Although Washakie initially objected to the Court's consideration of the Deer Memo and the BIA Law Enforcement Handbook as inadmissible hearsay, as noted above, this objection was effectively withdrawn by the Stipulation Regarding the Declaration of Michael Halbert (Docket No. 24) submitted by the parties.   The Plaintiff's Motion to Strike (Docket No. 14) did not request that the Court strike Halbert's sworn statement that he had reviewed the BIA records and found no record that a Shoshone-Bannock tribal policeman had been issued an SLECC card, even though such a statement may have constituted inadmissible hearsay.  *See* Fed. R. Evid. 803(6) & (7).

**Memorandum Decision and Order – Page 6**

Cir.2002)).

Halbert's opinions at paragraph 10 and 11 offer improper legal conclusions. His statement in paragraph 10 that no Fort Hall tribal police officers were certified as federal law enforcement officers is a factual statement, not a legal conclusion, and will be considered as such by the Court.  However, the second part of paragraph 10 – suggesting that because no record of certification exists the Fort Hall tribal officers were not federal law enforcement officers – is an improper legal conclusion and will not be considered by the Court.   Likewise,  paragraph 11 states an improper legal conclusion that no Fort Hall tribal police officers were federal officers under the FTCA.   Accordingly, that legal opinion will not be considered by the Court.  On the other hand, the Court will consider the documents upon which Halbert relied in reaching that conclusion, as well as Halbert's other non-legal opinions,  and form its own opinion as to the tribal police officer's status.

## III.    Motion to Dismiss for Lack of Subject Matter Jurisdiction

The Ninth Circuit follows the Sixth Circuit's burden shifting analysis for subject matter jurisdiction under the FTCA.  *Prescott v. United States*, 973 F.2d 696, 701 (9th Cir. 1992) (following *Carlyle v. United States*, 674 F.2d 554 (6th Cir. 1982)).  Under *Prescott*, the Plaintiff bears the initial burden of demonstrating

to the Court that there is subject matter jurisdiction under the FTCA's general waiver of sovereign immunity.  *Id.*  However, to properly allege subject matter jurisdiction it must appear on the face of the complaint that the claims asserted do not fall within one of the statutory exceptions to the waiver of sovereign immunity contained in 28 U.S.C. § 2680.  *Id.*  The Ninth Circuit does not require the Plaintiff to disprove each of the § 2680 exceptions in turn, but the Plaintiff may not claim federal jurisdiction if the claim is "clearly within the exceptions of § 2680."  *Id.*  The burden then shifts to the United States to actually prove the applicability of the exception under § 2680.  *Id.*

Washakie meets his initial burden.  The Complaint alleges that the Fort Hall tribal police used excessive force and thereby assaulted and injured Washakie while he was incarcerated at the Fort Hall jail.   Such excessive force allegations would, at first blush, appear to fall within the § 2680(h) assault and battery exception to the waiver of sovereign immunity.  However, § 2680(h) provides an "exception to the exception," so that the assault and battery exception does not apply to the actions of "investigative and law enforcement officers of the United States Government."  The Complaint alleges that the Fort Hall tribal police officers are federal law enforcement officers by virtue of the tribal self determination contract with the Department of the Interior.  Washakie has thus adequately alleged

**Memorandum Decision and Order – Page 8**

that the Fort Hall tribal police do not qualify for the assault and battery exception

of § 2680(h).  Therefore the Plaintiff has met his initial burden.

The United States is not required to accept Washakie's allegations and may

attempt to prove the applicability of the exception despite the adequacy of

Washakie's allegations.  In analyzing this approach to the FTCA, the Ninth Circuit

reasoned that a motion seeking dismissal of a claim for lack of subject matter

jurisdiction because of one of the § 2680 exceptions is "analogous" to an

affirmative defense.  Therefore, the burden of proof should lie with the party

benefitting from the defense.  *Id.* at 702.

The question of the United States' FTCA liability for the actions of tribal

police officers is a case of first impression in this Circuit.  However, the United

States relies upon the analysis of the Tenth Circuit in *United States v. Dry*, 235

F.3d 1249 (10th Cir. 2000), and the Fifth Circuit in *Hebert v. United States*, 438

F.3d 483 (5th Cir. 2006)) as dictating that tribal police officers should not, under

the circumstances presented here, be considered "investigative or law enforcement

officers" under § 2680(h).   In *Dry* and *Herbert,* the court used a two-part legal

analysis.  First, a tribal police officer must be certified as a federal law enforcement

officer for that officer to come under § 2680(h).  Second, the tribal officer must

have acted under color of federal law at the time of the alleged tort.  *See Dry v.*

**Memorandum Decision and Order – Page 9**

*United States*, at 1254; *Hebert v. United States*, at 486.   The Court finds the *Dry* approach to be consistent with the language and apparent intent of 28 U.S.C. § 2680(h).

Here, the dispositive issue under *Dry* is whether the tribal law officers were certified as federal law enforcement officers.  In determining a motion to dismiss for lack of subject matter jurisdiction the Court must resolve factual questions in favor of the non-moving party.  *Autery v. U.S.*, 424 F.3d 944, 956 (9th Cir. 2005).  However, the evidence here is unrebutted.  The United States has presented evidence detailing how a tribal police officer is certified.  This was coupled with evidence that the Fort Hall tribal police do not satisfy the requirements for certification, and that there is no indication that the required documentation for certification has been issued to any Fort Hall tribal police officer.   Washakie has not presented any affidavits or other evidence to challenge these assertions.  In the absence of any contrary evidence, the Court has little difficulty concluding, as a matter of law, that none of the tribal police involved in the altercation with Washakie were "investigative or law enforcement officers of the United Stated Government."  28 U.S.C. § 2680(h).  The Court therefore must conclude that the "exception to the exception" does not apply, and that the Complaint, to the extent it alleges excessive force, falls within the assault and battery exception to the waiver

of sovereign immunity contained in the FTCA.   The Court therefore lacks subject matter jurisdiction over those claims, and they must be dismissed.

The United States contends that Washakie's claims that the tribal employees negligently failed to provide him with medical care for injuries arising from the assault are also subject to the assault and battery exception to the FTCA's waiver of sovereign immunity.   In making this argument, the United States  relies upon language in *Shearer v. U.S.*, 473 U.S. 52, 55 (1985), to the effect that "[s]ection 2680(h) does not merely bar claims for assault or battery; in sweeping language it excludes any claim arising out of assault or battery."  However, *Shearer* involved an attempt by a plaintiff to avoid the effect of § 2680(h) by "by framing her complaint in terms of negligent failure to prevent the assault and battery."  *Id.* Washakie employed a similar tactic here – framing his excessive force claim to allege that he was "negligently or intentionally assaulted by Fort Hall policemen." Complaint, at 3 (Docket 1).   In light of *Shearer*, such an effort to cast a claim in terms of both negligence and an intentional tort must fail and the excessive force claim dismissed.

The same is not true, however, of Washakie's separate claim that tribal employees – including police officers, jailers and EMTs – were negligent in responding to his requests for medical attention after the assault.   That claim

**Memorandum Decision and Order – Page 11**

"arises out" of the assault only in the sense that the need for medical assistance was created by the assault.   However, more importantly, it is not an attempt to re-cast an intentional tort claim into a negligence claim to avoid the effect of the statutory exception.  Rather, the claim focuses on a completely different duty (i.e., the duty to provide adequate medical care), and completely different conduct (i.e., ignoring a request for medical assistance and mis-diagnosing a medical condition).   As such, the facts here are distinguishable from those presented in *Shearer*, and Washakie's claims related to the medical care provided during his incarceration are not subject to dismissal.

## ORDER

In accordance with the Memorandum Decision above,

NOW THEREFORE IT IS HEREBY ORDERED, that the Motion to Strike (Docket No. 17) is hereby GRANTED to the extent that it includes an opinion as to the legal status of the Fort Hall tribal police and is DENIED in all other respects.

IT IS FURTHER ORDERED, that the Motion to Dismiss (Docket No. 9), is hereby GRANTED IN PART and DENIED IN PART.  The motion is granted in that all claims related to allegations that the Fort Hall tribal police used excessive force or assault, whether framed as an intentional or negligent act, are dismissed. However, the motion is denied as to all claims related to the medical care given to

or denied Washakie after his arrest.



DATED:  **October 13, 2006**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision and Order – Page 13**